IN THE DISTRICT COURT OF THE UNITED STATES
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| United States of America | ) | CR No.: 3:07-764-JFA |
| | ) | |
| v. | ) | Sentencing Memorandum |
| | ) | |
| Thomas Ravenel | ) | |
| | ) | |

The defendant, Thomas Ravenel, pled guilty to Count 1 of a nine-count Superseding Indictment on September 6, 2007. Count 1 charged him with conspiring with co-defendants Michael L. Miller and Pasquale Pellicoro to knowingly and intentionally conspiring to unlawfully possess with intent to distribute and to distribute a quantity of cocaine.[1]

On March 14, 2008, this court imposed a sentence consisting of a custodial term of 10 months, followed by a three year period of supervised release. This order sets forth the court's reasons for imposition of this sentence.

Following the defendant's guilty plea, the United States Probation Officer prepared a Presentence Report ("PSR") that was furnished to the defendant and his counsel, attorneys E. Bart Daniel and Gedney M. Howe III. Neither Ravenel nor the government filed any objections to the PSR.

The PSR written by the Probation Officer, and accepted without objection, established the defendant's offense level as 12 and his criminal case history category as I, yielding a custodial sentencing range of 10 to 16 months. The court adopted the Probation Officer's

---

[1] In violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(c) and 846.

version of the PSR as the starting point for purposes of advisory guideline sentencing.

The court next addressed the government's motion for a downward departure pursuant to § 5K1.1 of the United States Sentencing Guidelines Manual based upon Ravenel's substantial assistance in this case. Specifically, the government asserted that Ravenel has cooperated with the government from when he was initially approached by SLED Agent George Franklin O'Neal on June 15, 2007, providing authorities with information concerning the cocaine distribution in the Charleston, South Carolina area and with information that led to the indictment of co-defendant Pellicoro who, as of this date, is a fugitive.

The court, mindful of having already credited Ravenel's co-defendant Miller with having provided information leading to the indictment of Pellicoro, requested further explanation of the nature and circumstances of Ravenel's substantial assistance for which he sought a downward departure. The government responded that Miller's cooperation was interrupted and insisted in general terms that Ravenel provided information which was used in furthering the investigation and indictment on Pellicoro. Ravenel's attorneys separately argued that he provided information for the investigation and prosecution of Miller, whom the court notes SLED had already interviewed two weeks prior to Ravenel's initial interview, and whom the PSR indicates provided authorities with the identities of his suppliers and buyers.

Ravenel's attorneys also argued that Ravenel was "100% cooperative" and "fully forthcoming" about his drug use, and examined Agent O'Neal on the witness stand in support of their argument. According to paragraph 9 of the PSR, in his initial interview with Agent

2

O'Neal on June 15, 2007, "Ravenel indicated he first experimented with powder cocaine in 2002." According to paragraph 21 of the PSR, in his statement of adjustment for acceptance of responsibility, Ravenel describes his cocaine use as recent, stating "A couple of years ago I became friends with a group of 'new friends.' They were younger and exciting. We went to bars and did things, cocaine. I knew that I should not be associating with these people. I wanted to be friendly with them. I exercised extremely poor judgment in being with them and using cocaine." However, according to paragraph 49 of the PSR, in his presentence interview, Ravenel stated that he first began using cocaine when he was 18 and that he used cocaine sporadically between 1981 and 2005. Therefore, the court found it disputable that Ravenel was completely forthcoming in his initial interview with Agent O'Neal. Nevertheless, the court granted a one-level downward departure based on the representations of the government as to Ravenel's substantial assistance into the investigation and prosecution of Pellicoro. The departure yielded a new advisory sentencing guideline of eight to fourteen months.

After the court announced it would grant a one-level downward departure, Ravenel's attorneys, and, surprisingly, the government attorneys contrary to their usual position, vigorously argued in favor of a greater downward departure based on the information that Ravenel has provided concerning ongoing drug investigations involving other individuals whom the government has not yet charged and about whom the government cannot divulge further information without risk to its ongoing investigations. They argued that Ravenel will not have the benefit of a later Rule 35 motion because he will have finished serving his sentence before the government is able to conclude its other investigations and file a Rule 35

motion in this case. While the court is mindful of counsel's argument, the court notes that the government substantially controls the timing of the indictment, guilty plea, PSR preparation and sentencing in its cases. The court notes that it twice delayed the sentencing in this case, at the request of the government and defendant's counsel. The court notes that Ravenel's indictment was filed nine months ago, on June 19, 2007, which when combined with the normal two-months it takes for the Bureau of Prisons to designate an institution and the ten month sentence Ravenel is to serve, results in an investigation of more than twenty-one months—a period that exceeds by five months the length of time it took for the investigation into Operation Lost Trust. After hearing the arguments and evidence presented in the downward departure motion, including Agent O'Neal's representation that he talked with Ravenel approximately one hundred times since June 15, 2007,[2] it is perplexing to the court that the government could not present a single name of an individual to which Ravenel's substantial assistance led.[3]

After hearing from the parties again, the court announced that it would grant the government's motion for a downward departure and depart downward one level. The court determined that a sentence of ten months was the appropriate custodial sentence in this case. The court determined that a departure of one level in the Ravenel case is appropriate because

---

[2] Not including weekends, holidays and the two-month period that Ravenel was in rehab, there remain only 146 business days within which Agent O'Neal's 100 conversations with Ravenel could have taken place.

[3] In an effort to accommodate the government's argument that Ravenel should benefit from his cooperation with authorities in other ongoing investigations, the court permitted Ravenel to delay his reporting date until five months from the imposition of the sentence, within which time the government conceded that it would be able to complete its other investigations such that a determination on a Rule 35 motion could be made timely. By letter filed with the court on March 19, 2008, Ravenel declined to avail himself of the five month delay in reporting and stated that he wishes to report in the normal course.

the record disclosed that he provided substantial assistance that directly led to the indictment and subsequent guilty plea of Miller and the indictment of Pellicoro.

Consistent with the government's position in other cases, the court reserves ruling on the substantial assistance rendered by Ravenel in the investigation and prosecution of persons other than Miller and Pellicoro, until such time that the government presents an appropriate Rule 35 motion detailing the nature and level of Ravenel's substantial assistance in those matters.

Once the new advisory guideline level was determined, the court settled upon a sentence at the low to mid range of the guideline range. In doing so, the court also took into account the statutory sentencing factors set out in Title 18 of the United States Code Section 3553(a).

## STATUTORY FACTORS

In addition to considering the advisory guideline regime in determining a sentence sufficient, but not greater than necessary, to comply with the purposes set forth by statute, the court considered the factors set out in 18 U.S.C. § 3553(a). In considering those factors, the court found that the nature and circumstances of Ravenel's offense, involving a relatively minor amount of powder cocaine, as compared to amounts typically prosecuted in federal court, supported a custodial sentence at the midrange of the advisory guideline range. The court found the need to render a custodial sentence in order to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. Given the relatively minor amount of cocaine involved in this case, and the fact that the victims in this

offense were willing participants sharing the drugs at private parties, the court finds just punishment to favor a midrange sentence. However, the court recognizes that no matter how minor the amount of drugs involved, the law is the law, and it must be enforced. The court's function is not to make, but to apply, the law. Therefore, the court finds a custodial sentence is appropriate so as to promote respect for the law and to provide the defendant with needed correctional treatment. Considering the information provided in the PSR concerning the numbers of cocaine parties[4] that Ravenel hosted at his house, the house of a State Constitutional Officer, the court finds that to not impose a custodial sentence would not promote respect for the law.

The court has considered all these factors and has determined that a sentence at the midrange of the advisory guideline range, to wit: ten months, comports with all of the statutory sentencing factors, as well as the advisory sentencing guidelines. Having found that a downward departure of one-level was sufficient, the court denied Ravenel's motion for variance. The court recommends that if Ravenel otherwise qualifies, that he be designated to an institution as close to Charleston, South Carolina, as possible.

The court also heard from John Crangle, the Executive Director of Common Cause South Carolina, who raised the issue of the court requiring restitution from Ravenel for the costs of the Special Session of the South Carolina General Assembly that was called to select Ravenel's replacement as State Treasurer. The court questioned whether the request could be

---

[4] One individual reported attending 30 parties at Ravenel's house, at 27 of which Ravenel used and distributed cocaine.

properly considered as restitution, as that term is defined. However, before the court considered whether it could or would impose the costs of the Special Session as restitution, Ravenel volunteered to reimburse the State of South Carolina for the costs. The court imposed a fine of $221,323.69, payable to the Clerk of Court, and a mandatory special assessment of $100 due immediately.

The Clerk shall file this memorandum with the public record in this case as documentation of the court's reasons for imposition of the particular sentence.

IT IS SO ORDERED.

March 21, 2008
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge